IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBORAH LOCKLEAR | * | |
| *Plaintiff* | * | |
| v. | * | Civil Action No. 1:19-cv-00659-DKC |
| WALMART, INC., *et al.* | * | |
| *Defendants* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendants Walmart, Inc., *et al.* (collectively "Walmart") submit this memorandum in support of their Motion for Summary Judgment in this diversity action for negligence brought by Plaintiff Deborah Locklear ("Plaintiff"). There exists no genuine dispute of material fact and Plaintiff cannot meet her burden to show any breach of Walmart's duty to Plaintiff as a business invitee, and therefore Walmart is entitled to summary judgment as to all of Plaintiff's claims

### I.    UNDISPUTED FACTS

On April 23, 2016, Plaintiff went to the Walmart store located in Dundalk, Maryland to shop. *See Deposition of Plaintiff Deborah Locklear*, attached as Exhibit 1. Upon arriving at the store, Plaintiff parked her car, a small SUV-type vehicle, in a handicapped parking space in the Walmart parking lot. *Id.* at 55:18; 58:5. When she exited her car, she was using a cane for ambulation. *Id.* at 58:17-22. She had no difficulty walking and does not remember where she was looking when she first got out of the car, although she testified that she normally looks down when she gets out of her car. *Id.* at 63:15-64:10. She did not see anything unusual about the parking lot before she went into the store to do her shopping. *Id.* at 66:17-22.

Plaintiff shopped in the Walmart store for about one hour, and then returned to her car with her purchases, a single small potted plant and a six-pack of bottled soda, in her shopping cart. *Id.* at 62:9-63:1.  She placed the sodas in the trunk of her car first.  *Id.* at 70:4-9.  She then pushed the shopping cart along the driver's side of the car and opened the rear driver's side door to place the potted plant in the backseat.  *Id.* at 70:16-21; 71:8-17.  As she picked up the plant from her cart, she fell.  *Id.* at 16-18.  She did not see anything irregular in the parking lot prior to her fall, but noticed that her "feet were sliding in [a] hole" when she was helped up from the ground.  *Id.* at 76:4-19.  Plaintiff testified that at the time of her fall, the shopping cart "was covering [her] view" of the hole.  *Id.* at 82:8-13.  Plaintiff could not describe the size, width, or depth of the "hole," but stated that it "had gravel in it."  *Id.* at 79:6-20.  She stated that the "hole" was about a foot away from her car and closer to the rear driver's side door.  *Id.*  at 82:1-4.  Plaintiff did not know how long it had been there.  *Id.* at 80:10-22.

Store surveillance video footage captured Plaintiff's incident.  *See* surveillance video, attached as Exhibit 2.  The video confirms that on the date of the incident, the weather was clear and sunny.  *Id.*  Plaintiff arrives in the parking lot at approximately 5:26 p.m.  *Id.*  When she first arrives, there is no vehicle parked in the parking space immediately adjacent to the driver's side of her car, where the alleged depression existed.  *Id.*  Although the depression in the pavement on which Plaintiff alleges she fell is not visible in the video, the video does demonstrate that Plaintiff walks over and/or past the area where she falls at least once prior to her fall.  Specifically, the video shows Plaintiff get out of her car (at 5:26 p.m.) and walk directly next to her car past the rear driver's side door (at 5:27 p.m.).  *Id.*  She remains in the immediate vicinity for approximately three minutes, before walking into the store.  *Id.*  She returns from the store with her shopping cart just under an hour later, at approximately 6:24.  *Id.*  She places some items in the trunk/rear area

2

of her SUV, pushes her cart towards the rear driver's side door, the pulls it back and places it behind her car. *Id.* She lifts the plant from the cart, moves towards the rear passenger door, and appears to fall forward as she opens the rear passenger door at approximately 6:25 p.m. *Id.*

Two customers who had been sitting inside their car in the next aisle of the parking lot, Al-Quan McKnight and Al-Nisa Harrison, witnessed Plaintiff's fall and ran to help her up. *See Deposition of Al-Quan McKnight*, attached as Exhibit 3. *Id.* at 11:21-13:14. *See Deposition of Al-Nisa Harrison*, attached as Exhibit 4. *Id.* at 16:19-21:6. Both Mr. McKnight and Ms. Harrison recalled a depression in the pavement at the time of Plaintiff's incident, but neither of them could remember what it looked like or describe it in any detail. Neither Mr. McKnight nor Ms. Harrison had seen the depression before Plaintiff's incident or knew how long the depression had been there. *See* Ex. 3 at 24:16-27:3 and Ex. 4 at 23:18-27:19.

Store personnel arrived at the scene shortly after Plaintiff's alleged incident. When they arrived, Plaintiff was seated in her car and refused to get out or provide any written statement. The first associate on scene was Ebony Chamberlain, a support manager. *See* Affidavit of Ebony Chamberlain, attached as Exhibit 5. Ms. Chamberlain observed a shallow depression in the pavement next to the driver's side of Plaintiff's car and took photographs of the depression. *See* photographs attached as Exhibit A to Ms. Chamberlain's Affidavit. The depression was less than 1" deep and contained visible loose gravel. *Id.* Ms. Chamberlain did not see or know of the existence of the depression in the pavement prior to Plaintiff's incident, nor was she aware of any other customer incidents involving the depression prior to Plaintiff's incident. *Id.*

Current store manager Jason Bailey was deposed as Walmart's corporate designee and testified that per store policy, members of management regularly perform daily inspections of the store property and grounds, including the parking lot. *See* Deposition of Jason Bailey, attached as

3

Exhibit 6, at 59:11-15.   In addition, cart pushers working in the parking lot are trained and instructed to make sure that the parking lot is clean.  *Id.* at 213:1-8.  Defects in the parking lot are reported to the home office for processing work orders for repairs.  *Id.* at 78:11-15.  In addition, potentially hazardous conditions should be blocked off until repairs can be made.  *Id.* at 211:1-12.  Per Mr. Bailey's testimony, the lack of any barrier related to the depression where Ms. Locklear claims she fell indicates either a lack of knowledge of its existence or no concern of a safety violation.  *Id.* at 212:3-17; 233:9-15.  Based upon his review of the available corporate information and as Walmart's corporate designee, Mr. Bailey confirmed that there is no information demonstrating that the store had any notice of the depression in the pavement prior to Ms. Locklear's incident.  *Id.* at 234:1-9.

Plaintiff has attempted to overcome the lack of notice in this case with the expert report and testimony of Anthony Shinsky.  However, Mr. Shinsky's report is based primarily upon photographs provided by Plaintiff at an unknown date some time after her incident, that show a depression in the pavement filled with water and debris.  In his deposition, Mr. Shinsky admitted that the photograph of the parking lot surface provided by Plaintiff appears deeper than the photograph provided by Walmart taken on the date of the incident.[1]  In addition, defense expert M. Gordown Brown has provided a rebuttal report explaining the deficiencies in Mr. Shinsky's report.  *See* Brown Report, attached as Exhibit 7.  Accordingly, as his report is based primarily on facts not supported by the record, as the photograph on which he relies was taken some time after the date of the incident and contrasts starkly with that provided from the date of the incident, Mr. Shinsky's report should be entitled to no weight in the consideration of this Motion.

---

[1] Mr. Shinsky was deposed on November 14, 2019 and his deposition transcript is not yet final.  Defendants will supplement this Memorandum upon receipt.

Discovery is now closed.  There is no genuine dispute of fact as to whether the store had notice of the depression in the pavement, without which Plaintiff is unable to demonstrate that Walmart breached any duty.  For the following reasons, Walmart is entitled to summary judgment as a matter of law.

## II.   <u>STANDARD OF REVIEW</u>

Fed. R. Civ. Proc. 56 governs summary dispositions and provides, in pertinent part, that summary judgment shall be granted if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To meet its burden, the movant must demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material only if it affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  Once the movant makes his or her showing, the burden shifts to the non-moving party to identify with specificity the material facts within the record that are disputed.  Fed. R. Civ. Proc. 56(a); *Anderson* 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 322-23.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In *Celotex v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986), the Supreme Court observed that the summary judgment procedure inures to the benefit of defendants so that they may "demonstrate in the manner by the rules, prior to trial, that the claims and defenses have no factual basis." *Id.* Thus, a moving defendant need only demonstrate that the plaintiff failed to "make a showing sufficient to establish the existence of an element essential to that party's case . . . ." *Id*. at 325.  The moving party's burden of persuasion is discharged by showing to the court that there is an absence of evidence to support the nonmovant's case.  *Id*. at 323.  According to

5

*Catrett,* a moving party need only set forth the basic underpinnings for its motion.  Then, it is incumbent upon the opposing party to marshal such facts from the confines of the record to show the existence of a genuine dispute of material fact.

To meet her burden, Plaintiff must present more than mere conjecture or speculation.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  The applicable standard for summary judgment is well established: a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *Northern R. Co. v. Page*, 274 U.S. 65, 72-73 (1927) (stating that there can be no finding for the plaintiff "if essential facts are left in the realm of conjecture and speculation"); *Olney v. Carmichael*, 202 Md. 226, 233-234 (1953) ("The evidence in a case is legally sufficient if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident. . . . To permit submission of a case to a jury for its finding, there must be evidence of the cause of action beyond conjecture and speculation[.]").  By contrast, Plaintiff must put forth facts and evidence gleaned from the record.  Fed. R. Civ. Proc. 56(c)(1)(A).

### III.   ARGUMENT

This diversity action for negligence is governed by Maryland law.  *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938).  Plaintiff bears the burden to establish sufficient facts to prove each of the elements necessary to make out a prima facie negligence case.  *See Peterson v. Underwood*, 258 Md. 9, 15 (1970) ("It is fundamental that in a negligence action the plaintiff has the burden of proving all the facts essential to constitute the cause of action.").  "Any theory of liability sounding in negligence is predicated on the existence of the following elements: '(1) that

the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Warr v. JMGM Group, LLC*, 433 Md. 170, 181, 70 A.3d 347, 353 (2013) (quoting *Valentine v. On Target, Inc*., 353 Md. 544, 549, 727 A.2d 947, 949 (1999)). Under Maryland law, "a proprietor of a store owes a duty to his [or her] customers to exercise ordinary care to keep the premises in a reasonably safe condition." *Moulden v. Greenbelt Consumer Services, Inc*., 239 Md. 229, 231-32, 210 A.2d 724, 725 (1965). The store owner, however, "is not an insurer of the safety of his [or her] customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in the store." *Id.* Thus, in order to demonstrate a breach of duty, plaintiff must present evidence to show: "(1) that the storeowner had actual or constructive notice of a condition which created an unreasonable risk of harm to the invitee, (2) that the storeowner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger, and (3) that the storeowner failed to take reasonable means to make the premises safe or to give adequate warning of the condition to the invitee." *Lloyd v. Bowles*, 260 Md. 568, 572–73 (1971) (*citing Gast, Inc. v. Kitchner*, 247 Md. 677, 685 (1967); Restatement (Second) of Torts s 343 (1965)) (emphasis added). "[A]n entity charged with failing to maintain premises in a reasonably safe condition is entitled to summary judgment in its favor if it neither created nor actually knew of the hazard, and if there is no evidence showing that the hazardous condition existed long enough for that party to remedy the hazard or warn of its existence." *Zilichikhis v. Montgomery Cty.*, 223 Md. App. 158, 187, 115 A.3d 685, 702 (2015). It is undisputed that Walmart, as a business owner, has a duty to its business invitees, such as Plaintiff, to keep its premises reasonably safe for customers. Fact discovery is now closed

and there exists no evidence that Walmart failed to act reasonably or failed to keep its premises reasonably safe for customers.  Accordingly, Plaintiff cannot demonstrate that Walmart breached its duty to business invitees, including Plaintiff.  To conclude otherwise would be to make Walmart an "insurer of [Plaintiff's] safety," which Maryland law expressly prohibits.

> **A. WALMART IS NOT LIABLE FOR PLAINTIFF'S ALLEGED INJURIES AND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE THAT WALMART BREACHED ITS DUTY TO PLAINTIFF BECAUSE IT HAD NO NOTICE OF THE EXISTENCE OF ANY DANGEROUS OR DEFECTIVE CONDITION.**

In a premises liability case, to sustain a cause of action against a business proprietor, a plaintiff "must prove not only that a dangerous condition existed but also that the [proprietor] had actual or constructive knowledge of the dangerous condition." *Richardson v. Nwadiuko*, 184 Md. App. 481, 495, 966 A.2d 972, 980 (2009) (quoting *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315, 918 A.2d 1230 (2007)); *see also Deering Woods Condo. Ass'n v. Spoon,* 377 Md. 250, 265, 833 A.2d 17, 25 (2003) (affirming summary judgment in favor of condominium association where association had no actual or constructive notice of icy conditions that caused plaintiff to fall and sustain injuries).  Additionally, the knowledge of the dangerous condition must have been obtained "in sufficient time to give [the possessor] the opportunity to remove it or to warn the invitee of the dangerous condition." *Id.*

In order to prove constructive knowledge, the plaintiff must demonstrate how long the dangerous condition existed, and that it existed long enough to permit the defendant to discover the condition.  *See Lexington Market Auth. v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964) ("[T]he burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence."); *Montgomery Ward & Co. v. Hairston*, 196 Md. 595, 598-99, 78 A.2d 190 (1951) (holding that the evidence was "legally

insufficient to support an inference of constructive notice" where plaintiff, who slipped on an unknown substance, could not say that the substance was placed there by employees of defendant, that its presence was known to them, or that it was there for an appreciable time before the accident). *See also Maans v. Giant of Md. LLC.,* 161 Md. App. 620, 632-33, 640, 871 A.2d 627, 634, 639 (2005) (noting that notice is necessary to prove negligence in a premises liability case because "[to do] away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury"). Importantly, Maryland courts have also explicitly recognized that a shopkeeper is under **no duty to continuously inspect its premises** and a retailer cannot be reasonably expected to remedy a potential hazard as soon as it occurs. *See Zappala*, 233 Md. at 445 ("It may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary.").

In this case, there is no evidence that the store created or had actual or constructive notice of the depression in the pavement that Plaintiff alleges caused her fall. As noted by Plaintiff's expert in his deposition, the defect in the pavement is a naturally occurring condition. In other words, it was not created by Walmart. Further, there is no evidence whatsoever that Walmart had actual notice of the depression in the pavement. Ebony Chamberlain, a support manager and the first member of the store to arrive on scene, did not see or know about the condition of the pavement prior to Plaintiff's incident. *See* Ex. 5. Mr. Bailey, Walmart's corporate designee, conducted a review of the relevant records and found no records indicating that Walmart knew

9

about the depression prior to Plaintiff's incident. *See* Ex. 6 at 234:1-9. Indeed, he testified that the store does regular inspections of the parking lot, and potentially hazardous conditions should be reported to the home office for repairs and blocked off from customer access. *Id.* at 78:11-15; 211:1-12. There is no evidence that the store did not make reasonable inspections. In addition, Plaintiff testified that she had no knowledge as to how long the parking lot condition existed prior to her incident. *See* Ex. 1 at 80:10-22. Likewise, Mr. McKnight and Ms. Harrison, the customer witnesses, did not see the depression prior to Plaintiff's incident and had no knowledge as to how long it was there prior to the incident.

Furthermore, Plaintiff's reliance on the expert report and opinion of Mr. Shinsky is unavailing on this point, because Mr. Shinsky relies on totally irrelevant photographs that mischaracterize the state of the parking lot on the date of the incident and therefore his opinion lacks a factual basis. *See Blake v. Bell's Trucking, Inc.*, 168 F. Supp. 2d 529, 533 (D. Md. 2001), *aff'd*, 31 F. App'x 90 (4th Cir. 2002) ("[The] district court has a responsibility to ensure that an expert's opinion has an adequate basis in fact."); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."). As explained by Mr. Brown, Mr. Shinsky's report is unsupported by competent facts because he is relying on undated photographs that contrast starkly with photographs of the depression that are known to have been taken on the date of the incident. *See* Ex. 7; Ex. 5. Accordingly, this opinion is wholly insufficient to create a genuine dispute of material fact.

In sum, there is no dispute of fact that Walmart did not create the issue, nor is there any evidence that Walmart failed to make reasonable inspections of the area. Maryland law is clear that a shopkeeper, such as Walmart, is not required to make continuous inspections, and is not

liable for a condition it did not create and of which it had no notice.  Discovery is now closed and

Plaintiff has failed to set forth any evidence to meet her burden.  Without proof of knowledge

(actual or constructive) of a defective condition on its premises, Plaintiff cannot demonstrate that

Walmart breached its duty to "keep the premises in a reasonably safe condition" and therefore

cannot make out a prima facie negligence case.  *Moulden*, 239 Md. at 232, 210 A.2d at 725.

Accordingly, Walmart is entitled to summary judgment as a matter of law.

> **B.   WALMART IS NOT LIABLE FOR PLAINTIFF'S ALLEGED INJURIES AND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE THAT WALMART BREACHED ITS DUTY TO PLAINTIFF, WHERE THE ALLEGED DEFECTIVE CONDITION WAS OPEN AND OBVIOUS.**

Maryland law is clear that "an owner or occupier of land only has a duty to exercise

reasonable care to 'protect the invitee from injury caused by an unreasonable risk' **that the invitee**

**would be unlikely to perceive in the exercise of ordinary care for his or her own safety**, and

about which the owner knows or could have discovered in the exercise of reasonable care."

*Tennant v. Shoppers Food Warehouse*, 115 Md. App. 381, 388 (1997) (quoting *Casper v. Chas.*

*F. Smith & Son, Inc.,* 316 Md. 573 (1989) (emphasis added).  Like the landowner, the invitee also

"has a duty to exercise due care for his or her own safety. This includes the duty to look and see

what is around the invitee. Accordingly, the owner or occupier of land ordinarily has no duty to

warn an invitee of an **open, obvious, and present danger**." *Id.*

No Maryland Courts have specifically addressed the issue of the open and obvious defense

as it relates to "potholes", however, Judge Davis of the United States District Court for the District

of Maryland did grant summary judgment on the grounds of an open and obvious danger in a hotel

parking lot in the case of *Gellerman, et al. v. Shawan Road Hotel Limited, et al.*, 5 F. Supp. 2d 351

(1998).  In *Gellerman*, Judge Davis held that as a matter of law the defense was entitled to

summary judgment and stated, "I have carefully reviewed the parties' memoranda and exhibits, including photographic depictions of the location of the occurrence. I am persuaded that, as a matter of law, the condition of the curb/sidewalk joint on defendants' premises was open and obvious, and that Maryland law does not allow recovery under the circumstances presented in this case. Nor was the need to be alert to the possibility of moving vehicles on the parking lot, the layout of which provided wholly unobstructed views in all directions from plaintiffs' vantage point, "a distraction that was unexpected and substantially beyond the miscellany of activity normally found on" large parking lots, so as to excuse Mrs. Gellerman's failure to see what was there to be seen had she been properly observant in the exercise of reasonable care for her own safety." *Id.* at 353-354.

Several other state courts (and federal courts apply state tort law) have described "common potholes" as "the quintessential example of an open and obvious danger." *Turner v. United States*, 2011 WL 3489784, *7 (E.D. Mich. 2011) (unreported) (compiling Michigan state cases opining that a "common pothole" is an open and obvious condition). *See also Quick v. Strategic Restaurants Acquisition Company, Inc.*, 2013 WL 1305583 (S.D. Miss. 2013) (unreported) (granting summary judgment in favor of the defendant and concluding that a "shallow depression" no more than 10 inches around and one and one-half inches deep . . . . does not create an unreasonably dangerous condition under Mississippi law. . . . [and] should have been obvious to an invitee exercising ordinary care"). In the *Turner* case, for example, the United States District Court for the Eastern District of Michigan granted the defendant property owner's motion for summary judgment in a slip and fall on an alleged "pothole" in the parking lot, concluding that a depression in the pavement was "open and obvious" where the testimony was that the Plaintiff tripped and fell in a pothole described as "3-6 inches in depth and in width from the size of an 8 ½

12

x 11 sheet of paper to the diameter of something between a softball and a basketball." *Id.* at *7. The Court also noted that "authenticated photographs which were attached to Defendant's motion for summary judgment which depict the area of the parking lot where Plaintiff claims to have slipped and fallen show a much more benign 'pothole' than described by either Plaintiff or [her fact witness][;] [h]owever, even accepting that Plaintiff and [her witness] accurately described the magnitude of the defect, a pothole of these dimensions would clearly be on the 'ordinary' end of the spectrum[.]" *Id.* Particularly relevant to the instant case, the Court also addressed the presence of "loose gravel" in the alleged pothole, explaining that "[l]ike the pothole itself, the loose gravel, which can be expected to surround a parking lot pothole, is as open and obvious as the pothole itself . . . [and] can similarly be avoided by an 'ordinarily prudent' person." *Id.*

In this case, it cannot reasonably be disputed that the depression in the pavement was open and obvious and that a reasonably prudent would have noticed it and avoided injury in the exercise of ordinary care. Photographs show that the depression was less than one inch deep and contained a significant amount of loose gravel, visible and apparent to the naked eye. In addition, photographs show that the location of the depression along the painted parking lot lines create a color contrast that would have been noticeable to an ordinary person.[2] The fact that Plaintiff failed to see the depression in the ground does not mean that it was not open and obvious and does not relieve her from her corresponding duty to pay due care and attention to her surroundings. Based upon the evidence in the record, viewed in the light most favorable to the Plaintiff, no reasonable fact finder could conclude that the depression in the pavement where Plaintiff alleges she fell was anything other than open and obvious. To conclude otherwise would contradict longstanding Maryland law that a store owner "is not an insurer of the safety of his [or her] customers while

---

[2] In his deposition, Mr. Shinsky agreed that the presence of the depression along the line did create a visible contrast.

they are on the premises and **no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in the store**." *Moulden v. Greenbelt Consumer Services, Inc*., 239 Md. 229, 231-32, 210 A.2d 724, 725 (1965) (emphasis added).

### C. WALMART IS NOT LIABLE FOR PLAINTIFF'S ALLEGED INJURIES BECAUSE PLAINTIFF ASSUMED THE RISK OF HER INJURIES AND WAS CONTRIBUTORILY NEGLIGENT.

In Maryland, assumption of risk and contributory negligence are affirmative defenses and completely bar a plaintiff's recovery in an action for negligence. *See Harrison v. Montgomery County Bd. of Educ*., 295 Md. 442, 456 A.2d 894 (1983); *Warsham v. James Muscatello, Inc.,* 189 Md. App. 620, 639, 985 A.2d 156, 167 (2009). "Assumption of the risk and contributory negligence are closely related and often overlapping defenses." *Schroyer v. McNeal,* 323 Md. 275, 280, 592 A.2d 1119, 1121 (1991). Thus, "[t]hey may arise from the same facts and, in a given case, a decision as to one may necessarily include the other." *Id.*

The assumption of risk doctrine is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk. *Schroyer*, 323 Md. at 282, 592 A.2d at 1122. "[T]here are three requirements that a defendant must prove to establish the defense of assumption of the risk: (1) the plaintiff had knowledge of the risk of the danger; (2) the plaintiff appreciated that risk; and (3) the plaintiff voluntarily confronted the risk of danger." *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 395, 31 A.3d 583, 588 (2011). Unlike contributory negligence, assumption of the risk does not require a finding that the plaintiff was negligent. *Schroyer*, 323 Md. at 283, 592 A.2d at 1123. The fact that the plaintiff was aware of the risk, and voluntarily undertook the risk, is sufficient. *Id.* Assuming the risk is not always contributory negligence, as a person may voluntarily assume a risk, but then proceed carefully to avoid danger after starting. *Id.*

14

In the very recent April 17, 2019 unreported opinion of *Dickerson v. Streamside Association, Inc.*, the Court of Special Appeals affirmed the grant of summary judgment to the defense in a case where Plaintiff claimed injury after stepping in a pothole, and in doing so the Court thoroughly analyzed the standard for contributory negligence in Maryland.  In Maryland, "it [is] the well-established law ... that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence." *Harrison v. Montgomery Cty. Bd. of Educ.*, 295 Md. 442, 451 (1983). With respect to contributory negligence, the Court of Appeals has stated that "[o]ne is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens." *McManamon v. High's Dairy Prods. Corp.*, 230 Md. 370, 372 (1963). More recently, in *Woolridge v. Abrishami*, we held that:

> Contributory negligence is the neglect of duty imposed upon all men [and women] to observe ordinary care for their own safety and refers not to the breach of a duty owed to another, but rather to a failure of an individual to exercise that degree of care necessary to protect him or her self.

233 Md. App. 278, 302 (internal citations and quotation marks omitted) (quoting *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 696 (2013) ), *cert. denied*, 456 Md. 92 (2017).

*Dickerson v. Streamside Association, Inc.*, 2019 WL 1752795 (2019)(unreported).

Contributory negligence is negligence that contributes to cause a particular accident which occurs. *Schroyer*, 323 Md. at 283, 592 A.2d at 1123.  "[C]ontributory negligence arises from the failure of the plaintiff to use due care to avoid dangers . . . which he should know exist . . . because the dangers are so obvious that any ordinarily prudent man would see them and guard against them." *Texas Co. v. Washington, B. & A. E. R. Co*., 147 Md. 167, 174, 127 A. 752 (1925). Similarly, a plaintiff may be contributorily negligent even if he fails to appreciate the risk, if he

proceeds negligently. *Schroyer*, 323 Md. at 281, 592 A.2d at 1122. When a plaintiff appreciates the risk, and encounters it negligently, "the bar to recovery is two-pronged: (1) because the plaintiff assumed the risk of injury and (2) because the plaintiff was contributorily negligent." *Id.*

"It is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid injury to himself." *Southern Maryland Electric Cooperative, Inc. v. Blanchard*, 239 Md. 481, 485, 212 A.2d 301, 304 (1965). The Court of Appeals has held that a plaintiff "who either did not look when he should have, or did not see when he did look . . . requires the finding that he was contributorily negligent as a matter of law." *Schmidt v. Greyhound Corp.*, 228 Md. 15, 17, 177 A.2d 897, 898 (1962) (barring recovery for pedestrian struck by a car because he failed to look both ways before crossing the street). In other words, when "a person of ordinary intelligence, with unimpaired eyesight, [ ] says that he did not see an object which, had he used his senses, he, in the nature of things, must have seen . . . the law . . . charge[s] him with such knowledge." *Blanchard*, 239 Md. at 485, 212 A.2d at 304. Summary judgment in favor of the defendant raising a defense of assumption of risk or contributory negligence is appropriate "where it is clear that any person of normal intelligence in the plaintiff's position must have understood the danger." *Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 109, 31 A.3d 212, 223 (2011).

In this case, the evidence is undisputed that Plaintiff walked over the area where she fell at least one time prior to her fall, and should have been aware of the open and obvious condition. She testified that she normally looks at the ground when she exits her car, but apparently did not do so upon arriving at the Walmart store, or otherwise failed to appreciate the existence of the uneven pavement if she did indeed look. In addition, she testified that she pushed her shopping cart over the depression, which would have created some irregular movement that should have alerted her to the existence of uneven pavement. By failing to look at the ground and appreciate

the uneven pavement, despite the open and obvious condition, Plaintiff failed to exercise due care to avoid her alleged injury.   In conclusion, Plaintiff failed to exercise that degree of care and caution which a reasonable and prudent person would have exercised to ensure her own safety, and therefore, Plaintiff in the instant case is barred from recovery based on her assumption of the risk and contributory negligence.   Accordingly, Walmart is not liable for Plaintiff's injuries and is entitled to summary judgment as a matter of law.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Walmart, Inc., *et al.* respectfully pray this Honorable Court to grant this Motion for Summary Judgment, and for such further relief as justice may require.

Respectfully submitted,


*/s/ Jennifer M. Alexander*
Jennifer M. Alexander
jalexander@mhlawyers.com
Fed. Bar No.:  15222

*/s/ Kelly S. Kylis*
Kelly S. Kylis
kkylis@mhlawyers.com
Fed Bar. No.:  14126

**MCNAMEE HOSEA JERNIGAN KIM
GREENAN & LYNCH, P.A.**
888 Bestgate Road, Suite 402
Annapolis, Maryland 21401
410-266-9909
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 25th day of November, 2019, a copy of the foregoing was electronically filed and served via the Court's CM/ECF Systems upon:

Jason Wasserman, Esq.
Silverman Thompson Slutkin & White, LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
*Attorneys for Plaintiff*

*/s/ Jennifer M. Alexander*_____
Jennifer M. Alexander, Esquire
